IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | Criminal Case **3:24-CR-419-L** |
| | § | |
| **VIDAL BLANCO-BLAS** | § | |
| **a.k.a Julio Cesar Torres** | § | |

# MEMORANDUM OPINION AND ORDER

During the pretrial conference, the court discussed a number of potential issues concerning witness testimony and evidence. The court **issues** this order to rule on two of these issues.

## I. Defendant's Motion in Limine (Doc. 31)

Pursuant to Federal Rule of Civil Procedure 403, Defendant moves to preclude the Government from "calling Mr. Torres Mr. Blanco throughout the entire trial," as this is a fact the jury must decide. Doc. 31 at 2. "The defense concedes that the Government should be allowed tell their theory of the case to jury in opening and that includes that the Government alleging that Mr. Torres is in fact Mr. Blanco," but the defense contends that the Government "should not be allowed to constantly throughout the trial refer to Mr. Torres as Mr. Blanco" because doing so would be unduly prejudicial and confuse jurors. *Id.* at 3.

The Government counters that the Motion in Limine should be denied because reference to Defendant's true name (Vidal Blanco-Blas) during the trial is not unfairly prejudicial and would confuse the jury to not refer to both the defendant's true name and his alias, as different witnesses knew him at different times by one or the other name, and the Fifth Circuit has held on multiple occasions that a district court does not abuse its discretion in allowing the Government to refer to a defendant by an alias. Doc. 33 at 2 (citing *Untied States v. Roberson*, 124 F. App'x 860, 862 (5th Cir. 2005); and *United States v. Dean*, 59 F.3d 1479 (5th Cir.1995)). During the pretrial

conference, the Government also argued that its use of what it contends is Defendant's true name (Vidal Blanco-Blas) is relevant and necessary because it goes to the heart of the case.

A court may exclude evidence only "if its probative value is *substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). All relevant and probative evidence is necessarily prejudicial, but this does not justify the exclusion of evidence under Rule 403 unless its probative value is *substantially* outweighed by unfair prejudice or the other dangers that Rule 403 is meant to prevent.

While Defendant himself has forcefully argued during various proceedings that he is Julio Cesar Torres, not Vidal Blanco-Blas as charged in the most recent Second Superseding Indictment ("Indictment"), the court agrees with the Government that Defendant's two identities go to the heart of the Government's case, and it would be confusing to not allow the use of both names throughout the trial. The Government also indicated during the pretrial conference its intent to primarily refer to Defendant as Vidal Blanco-Blas during the trial, which will reduce confusion.

Moreover, this is not a complex charge or issue, so the court disagrees that jurors will be confused even if the Government uses both names during the trial or different witnesses testify that they knew Defendant as one or the other name. Even if doing so causes some prejudice, the probative value of such evidence or references to such evidence is substantially outweighed by a danger of unfair prejudice or confusion. Additionally, the defense included in its proposed jury instructions that a statement that arguments of lawyers are not evidence. If necessary, an instruction such as this can be included in the charge to jurors explaining that the Government's references to Defendant during the trial as Mr. Blanco or Mr. Torres are not evidence, and that

only documentary evidence and witness testimony admitted during the trial constitute evidence that the jurors can consider in reaching a verdict.

This issue, however, may be mooted to some extent because, in accordance with the court's oral directive during the pretrial conference, a proposed order was submitted for the undersigned's consideration regarding references to Defendant's name during the trial, and both sides indicated their agreement with the proposed parameters in this order for handling references to Defendant's name during the trial. Accordingly, for the reasons explained and to avoid confusion, Defendant's Motion in Limine (Doc. 31) is **denied** to the extent the defense requests that the court "preclude the Government from calling Mr. Torres Mr. Blanco throughout the entire trial pursuant to FRE 403," but the court has entered the parties' agreed proposed order regarding references to Defendant's name during the trial.[1] *See* Doc. 79.

## II. Evidence and Testimony Concerning Prior Convictions

The next evidentiary issue is whether the Government should be allowed to present evidence of Defendant's felony drug convictions from November 1999 or March 2017. In its Notice of Intent to Use Evidence, the Government indicated its intent to offer such evidence pursuant to Federal Rule of Evidence 609 "to impeach his respective testimony as such becomes available." Doc. 34 at 1. During the pretrial conference, in response to Defendant's objection to the admission of any such evidence, and the court's concern regarding the prejudicial nature of such evidence, the Government stated that it did not intend to use the 1999 conviction in its case in chief because of the age of the conviction. The Government further explained that it did not intend to directly reference the 2017 conviction in its case in chief, but that one of its witnesses,

[1] The order entered by the court contains a few slight alterations not included in the proposed order. These alterations are not substantive and were made to reflect that both parties in open court on October 14, 2026, had stated their agreement to the contents of the order.

James Murphy, would testify that Defendant's passport application, which is the subject of the Indictment and forms the basis for the charged offenses, was "flagged" for review and forwarded to him for the sole reason that Defendant was incarcerated in the "BOP" or the Federal Bureau of Prisons when he submitted the application; and that Mr. Murphy identified "fraud indicators" in the passport application, or certain things "stood out" that caused him to refer the passport application to the Diplomatic Security Service to be investigated for fraud.[2]

---

[2] In a separate discussion, the court expressed concern over Mr. Murphy's proposed testimony concerning "fraud indicators" because he was not been previously disclosed by the Government as a Rule 702 expert. During the pretrial conference, the Government continued to assert that Mr. Murphy was simply a lay witness who would testify about what he observed and did in connection with his review of Defendant's passport application. The court, however, directed the **Government to avoid using the term "fraud indicators" and to instruct its witnesses accordingly to avoid running afoul of Rule 702 and Fifth Circuit authority on this issue.** The Government, therefore, indicated that Mr. Murphy would instead testify to what "stood out" to him in his own review of Defendant's passport application. During the pretrial conference, the court also referenced the Fifth Circuit's discussion in *United States v. Cooks*, 589 F.3d 173 (5th Cir. 2009), regarding the difference between expert and lay witnesses. Because the Government stated that Mr. Murphy would testify based on his experience, and the court determines that such testimony *could* constitute Rule 702 expert testimony or come close to the line between lay and expert testimony, the court quotes here from the *Cooks* opinion in which the Fifth Circuit explained that lay testimony must be the product of "reasoning familiar to the *average person in everyday life*," whereas expert testimony results from "*specialized knowledge*" and a process that "*can be mastered only by specialists in the field*":

> In deciding whether the district court abused its discretion in qualifying Overby as an expert witness, we are guided by the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and Federal Rule of Evidence 702.
>
> In *Daubert*, the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury. *See Daubert*, 509 U.S. at 590-93, 113 S. Ct. 2786. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his "knowledge, skill, ***experience***, training, or education." FED. R. EVID. 702.
>
> If the witness is only testifying as a lay witness, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) ***not based on scientific, technical, or other specialized knowledge within the scope of Rule 702***. FED. R. EVID. 701. ***"[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field."*** *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir.2008) (internal quotations omitted). As explained by the Second Circuit, ***"a lay opinion must be the product of reasoning processes familiar to the average person in everyday life."*** *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir.2005). ***Moreover, any part of a witness's opinion that rests on scientific, technical, or specialized knowledge must be determined by reference to Rule 702, not Rule 701.*** FED. R. EVID. 701 advisory committee's note.

The defense argued, and the court agreed, that the Government's proposed manner of indirectly referencing Defendant's prior 2017 drug conviction through Mr. Murphy's proposed testimony would be an improper "back door" means of presenting inadmissible evidence regarding his 2017 conviction to the jury. Although the Government stated it did not intend to go into the details of the 2017 conviction or reference it directly, the court noted that the average person and juror would understand that, if Defendant was incarcerated in the "BOP" when he submitted the passport application, he was there because he had previously committed a felony offense.

To this, the Government argued that the 2017 conviction is intrinsic and inextricably intertwined with the charged offenses, as his passport application was only forwarded to Mr. Murphy for review because he was in "BOP custody" at the time. The defense disagreed and argued that there was no need for the Government to explain how or why the passport application came to be under review. The Government contended that, without this evidence, it would not be able to paint an accurate picture for the jury that would explain why this particular passport application was "flagged" for review when his prior applications for social security benefits and passports over the past forty years had been approved without undergoing similar scrutiny. Absent this explanation, the Government argued that the jury would wonder why prior applications by Defendant had not been flagged for similar review, and this could cause jurors to question Mr. Murphy's credibility and the validity of his review.

A determination of the admissibility of evidence of other acts begins with a determination of whether the evidence is intrinsic or extrinsic. *United States v. Coleman*, 78 F.3d 154, 156 (5th Cir. 1996). The admissibility of extrinsic evidence at trial is governed by Federal Rule of Evidence

---

*Cooks*, 589 F.3d at 179-80 (emphasis added). **The court will revisit this issue and the admissibility of Mr. Murphy's testimony as a lay witness, as necessary, upon hearing his testimony and any objections by the defense to his testimony during the trial of this case.**

404(b). *See United States v. Beechum*, 582 F.2d 898, 910-11 (5th Cir. 1978) (en banc). Intrinsic evidence, on the other hand, "is generally admissible, and its admission is not subject to rule 404(b)." *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005); *see also United States v. Garcia*, 27 F.3d 1009, 1014 (5th Cir. 1994) (noting that intrinsic evidence does not implicate Rule 404(b) and "consideration of its admissibility pursuant to Rule 404(b) is unnecessary").

Evidence of other acts is intrinsic if it and "evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *Coleman*, 78 F.3d at 156 (citation omitted). "Inextricably intertwined means that the conduct leading to each offense is the same." *Henderson v. Quarterman*, 460 F.3d 654, 663 (5th Cir. 2006). Intrinsic evidence "is admissible to complete the story of the crime by proving the immediate context of events in time and place." *Coleman*, 78 F.3d at 156 (citation omitted). "[E]vidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b), and is therefore not barred." *United States v. Asibor*, 109 F.3d 1023, 1034 (5th Cir.1997) (citation omitted).

Extrinsic evidence is admissible if it passes both parts of the *Beechum* test. *See Beechum*, 582 F.2d at 910. Under this test, the extrinsic evidence must first be relevant to an issue other than a defendant's character. *Id.* at 911. Second, the evidence must pass the balancing test outlined in Rule 403 of the Federal Rules of Evidence, that is, the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice to the defendant. *Id.* at 911 (footnote omitted). As noted above, the Government only argues that evidence of Defendant's incarceration in connection with his 2017 criminal conviction is admissible because it constitutes intrinsic

evidence. *Id.* The court, nevertheless, concludes that the evidence is not intrinsic, and it is not admissible under *Beechum*'s two-part test.

In this case, Defendant is charged with False Statement in Application and Use of Passport, in violation of 18 U.S.C. § 1542, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, in connection with the allegedly fraudulent passport application he submitted on April 11, 2023. Defendant's 2017 conviction is for Conspiracy to Possess With Intent to Distribute a Controlled Substance, 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(B)(ii). These are two entirely different types of offenses with different elements such that the conduct that gave rise to the offenses is not the same. Additionally, the conduct that that gave rise to the offenses occurred several years apart and thus could not have been part of the same criminal episode and conduct supporting the 2017 conviction could not have been and was not a necessary preliminary step toward completion of the passport fraud and identify theft charges in this case. While the Government focuses on the fact of Defendant's incarceration for the 2017 conviction when he is alleged to have committed the passport fraud and identify theft offenses in this case, his incarceration is the legal consequence of his prior criminal conduct, not action that he took in connection with the offense.

Consequently, neither Defendant's prior drug conviction nor his incarceration in 2023 falls into any of the categories for "other acts" that qualify as intrinsic evidence or evidence that is inextricably intertwined. As the court explained during the pretrial conference, the Government might have a stronger argument if Defendant's 2017 conviction involved a crime of dishonesty, but it does not. Moreover, even assuming that the evidence passes the first part of *Beechum*'s test, it does not pass the second part because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice to Defendant if the jury learns that he was previously

convicted of another unrelated felony, incarcerated because of that conviction, and had his passport application flagged for review in 2023 because he was incarcerated.

In the past, the court has allowed both the Government and the defense to briefly develop the background of the agents' investigation and the backgrounds of defendants when necessary for jurors to put in context trial testimony and evidence, and such evidence is relevant, admissible, and not unnecessarily cumulative, but the Government has not shown that Mr. Murphy's proposed testimony that Defendant's passport application was flagged for review because he was incarcerated or in custody qualifies as admissible intrinsic or extrinsic evidence. Accordingly, the court will not allow Mr. Murphy or the Government to introduce any evidence or make any comments in the presence of the jury in this regard.

## III. Conclusion

For the reasons explained Defendant's Motion in Limine (Doc. 31) is denied to the extent the defense requests that the court "preclude the Government from calling Mr. Torres Mr. Blanco throughout the entire trial pursuant to FRE 403," but the court has entered the parties' agreed proposed order regarding references to Defendant's name during the trial. Further, Mr. Murphy and the Government are precluded from and **shall not** introduce any evidence or make any comments in the presence of the jury regarding Defendant's prior convictions in its case in chief. *If, however, during the course of the trial, the Government believes that Defendant or defense counsel has "opened the door" to this previously excluded evidence or evidence has been developed that supports a prior argument regarding the exclusion or admission of this evidence, the Government may ask to approach the bench, request the court to revisit the issue, and obtain a ruling from the court.* Finally, The court will revisit the issue regarding the admissibility of Mr.

Murphy's testimony as a lay witness (or Rule 702 expert witness), as necessary, upon hearing his testimony and any objections by the defense to his testimony during the trial of this case.

**It is so ordered** this 15th day of October, 2026.

Sam A. Lindsay
United States District Judge